William **RAINES**, Plaintiff–Appellee,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant–Appellant.

No. 93–3557.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1994.

Decided Jan. 11, 1995.

Frederick J. Daley (argued), Marcie E. Goldbloom, Chicago, IL, for plaintiff-appellee.

Ann L. Wallace and Margaret C. Gordon, Asst. U.S. Attys., Office of the U.S. Atty. Criminal Div., Gary A. Sultz, Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, IL, William Kanter, Michael E. Robinson (argued), Dept. of Justice, Civil Div., Appellate Section, Washington, DC, for defendant-appellant.

Before MESKILL,* COFFEY, and RIPPLE, Circuit Judges.

* The Honorable Thomas J. Meskill, Circuit Judge for the United States Court of Appeals for the Second Circuit, is sitting by designation.

RIPPLE, Circuit Judge.

After William Raines won entitlement to social security disability benefits and supplemental security income, the district court awarded him attorney fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2)(A). The Secretary of Health and Human Services ("Secretary") appeals that award. She challenges both the district court's decision that a special factor justified enhancement of the award and the district court's inclusion of fees for administrative proceedings conducted after an earlier remand from that court to the agency. For the following reasons, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

I

A. *Prior Proceedings*

Plaintiff William Raines, a former Marine who later worked as a janitor, fork-lift operator and shipping clerk, became unemployed in 1982. In 1986, he applied for both social security disability insurance benefits and supplemental security income on the ground that a back injury and psychological impairments caused his disability. His applications were denied at all administrative levels. After a hearing, the Administrative Law Judge ("ALJ") determined that Mr. Raines had neither physical nor psychological impairments that imposed significant limitations on his ability to work. The Appeals Council's denial of Mr. Raines' request for review of the ALJ decision, entered December 10, 1987, became the final decision of the Secretary.

On January 29, 1988, Mr. Raines filed a civil action for judicial review of the Secretary's decision. With the consent of the parties, the case was assigned to a magistrate judge who sat as the district court pursuant to 28 U.S.C. § 636(c). By Order of June 8, 1990, the district court decided that the ALJ had committed an error of law by failing to develop fully the mental impairment issue, and remanded the case to the Secretary. On remand, the ALJ considered the evaluations and reports concerning Mr. Raines' mental impairment and heard the testimony of several psychologists and a vocational expert. On November 25, 1991, the ALJ issued a favorable decision granting Mr. Raines benefits from January 1, 1987. The ALJ's decision became the final decision of the Secretary on January 24, 1992. On January 29, 1992, Mr. Raines then filed a petition for EAJA attorney fees and expenses in the district court.

B. *District Court Proceedings*

Before the district court, the only issue was the amount of the attorney fee award. The United States did not contest that its position had not been substantially justified. Nor did it argue that the fee petition was not timely.[1] The district court was authorized, under 28 U.S.C. § 2412(d)(2)(A),[2] to award fees exceeding $75.00 per hour if such compensation was justified by either an increase in the cost of living or a special factor. Mr. Raines' petition requested $175.00 per hour for attorney fees. The petition claimed that this hourly rate was the prevailing market

---

1. The court pointed out that, after it had remanded this case in June 1990, the Supreme Court decided *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). Under *Melkonyan* a "final judgment," for purposes of the EAJA, referred to judgments entered by a court of law, and did not encompass decisions rendered by an administrative agency. *Id.* at 96, 111 S.Ct. at 2162. In its Order of October 31, 1991, the district court held that it would not apply *Melkonyan* retroactively to bar Mr. Raines from filing a timely fees application under the EAJA. The Secretary did not contest that decision in the district court or on appeal.

2. Under the EAJA, the "prevailing party other than the United States" is awarded fees and

expenses as long as the requirements of 28 U.S.C. § 2412(d)(1) are met. Those requirements are not at issue in this case. The permissible fee award is established in § 2412(d)(2)(A). It provides:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

rate for this type of litigation because of the limited availability of qualified social security lawyers. Alternatively, Mr. Raines requested fees that reflected the increase in the cost of living.

At the outset of its consideration of the fee petition, the district court noted that, in *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court had stated that the exception to the $75.00 statutory cap for attorneys "qualified in the proceedings" referred to qualifications "in some specialized sense, rather than in general legal competence." Order at 7 (quoting *Pierce,* 487 U.S. at 572, 108 S.Ct. at 2553). Therefore, it was necessary that the attorney possess "some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in all litigation." *Id.* It also noted that the Ninth Circuit had applied the special factor concept of *Pierce* to lawyers who have an expertise in the area of social security law in *Pirus v. Bowen,* 869 F.2d 536 (9th Cir. 1989). Employing these two cases as its decisional matrix, the court then examined the facts of this case to determine whether such an enhancement was appropriate. It found that Frederick J. Daley, Mr. Raines' attorney, possessed an expertise in the area of social security law, an expertise that the Secretary did not dispute. Order at 9. He had "familiarity and credibility with administrative and civil actions needed to effectively litigate social security claims." Order at 8–9.

Additionally, noted the district court, his law firm had litigated numerous social security cases before the Seventh Circuit and district courts. The court also found that "there is limited availability of attorneys in Chicago who are both experienced in Social Security law and willing to take a case such as Raines' for less than the prevailing rate." Order at 10. Finally, the court determined that the case involved complex issues requiring "more than just routine lawyering skills available from the general bar." [3] Order at 14. On the basis of these findings, the court held that Mr. Raines' attorney met the criteria for awarding the special factor market fee. It summarized those factors as follows: 1) expertise with a complex statutory scheme; 2) familiarity and credibility with a particular agency; and 3) understanding the needs of a particular class of clients. Order at 15.

The district court next turned to the question whether attorney fees incurred during the post-remand proceedings were compensable.[4] Beginning with the general premise that EAJA fees are not generally available for work performed in an administrative proceeding, the district court wrote that *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), allowed an exception to this rule and permitted fees incurred during administrative proceedings after a remand when the claimant *must* prevail on remand in order to be considered the prevailing party for purposes of awarding EAJA fees. Order at 15–16. The district court also acknowledged that *Melkonyan v. Sulli-*

---

3. The district court based this determination on the attorney's efforts to establish an early onset date which secured Mr. Raines' eligibility for disability benefits. An award of disability benefits, noted the district court, was much more advantageous to Mr. Raines than an award of SSI payments alone.

4. When seeking judicial review of the Secretary's denial of disability benefits, a claimant files a civil action in district court under 42 U.S.C. § 405(g). The first sentence of § 405(g) grants the right of review of "any final decision of the Secretary made after a hearing to which [the claimant] was a party." The second sentence requires that the action be brought in district court. The third sentence directs the Secretary to file a certified copy of the transcript of the administrative record. The remaining sentences guide the district court in its review. The sen-

tences pertinent to us, sentences four through six, provide:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.... The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

*van,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), later narrowed that exception to those cases in which the district court retains jurisdiction and contemplates the entry of a final judgment after the completion of administrative proceedings.

Nevertheless, the district court believed that EAJA fees could still be awarded in this case. The district court acknowledged that Mr. Raines did not apply for attorney fees within the thirty-day filing period prescribed by *Melkonyan* as beginning once the district court enters a remand order. *See* 28 U.S.C. § 2412(d)(1)(B). The district court also noted that it did not retain jurisdiction of the case to enter final judgment after the administrative decision because, at the time of the remand in this case, it was not the practice in this circuit for the district court to retain jurisdiction.[5] The district court further held that the lack of retention of jurisdiction was not fatal to the plaintiff's recovery of attorney fees for the remand proceedings because the remand proceedings were necessary for determining prevailing party status; therefore Raines would not have been considered "a prevailing party until he established his entitlement to benefits at the administrative proceedings." Order at 18.

The district court further held that *Shalala v. Schaefer,* — U.S. —, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), did not govern the disposition here. In that case, the Supreme Court held that a social security claimant who is granted a sentence four remand is a "prevailing party" upon remand, and that the actual administrative proceedings following remand are not covered by the EAJA. Again referring to the earlier precedent of this circuit, the district court explained that, "prior to *Schaefer,* this circuit would have held that Raines could not attain 'prevailing party' status until the result of the administrative proceedings became known." Order at 18. The court further pointed out that, in this case, the district court's "October 31, 1991 order instructed plaintiff that he would have 'an opportunity to file a timely fee petition **if he prevails in administrative**

proceedings.'" *Id.* (emphasis in text). Because the district court had advised Mr. Raines that the administrative proceedings were necessary for the resolution of prevailing party status, that court, relying on *Hudson,* concluded that the fees incurred during the administrative proceedings held pursuant to the district court's remand order were recoverable under the EAJA. Order at 18–19. Accordingly, the district court awarded plaintiff all of the expenses requested and the fees sought for work performed before the district court and in the post-remand hearing. The court denied the fees for services rendered in administrative proceedings prior to the court remand. The total award was $13,212.50 in fees, for 75.5 hours at $175.00 per hour, and $732.90 in expenses.

## II

## DISCUSSION

### A. *Enhanced Fee Award*

#### 1.

The Secretary has not objected to a fee award for Mr. Raines' counsel; in fact, she expressly has agreed that a cost of living adjustment to the $75.00 hourly rate was appropriate. Nor has the Secretary contested the district court's conclusion that plaintiff's counsel is skilled in social security law. The Secretary's submission on appeal is more precisely tailored: that the district court erred in enhancing the attorney fees on the basis that social security benefits law constitutes a "specialized" practice for EAJA purposes. In support of her position, the Secretary points out that, if such practice specialties routinely are recognized as "special factors," fee awards that are actually subject to the statutory cap imposed by Congress would be rare. The Secretary urges that we adopt the views of the Courts of Appeals for the District of Columbia and Tenth Circuits, which require skills or expertise above and beyond an attorney's knowledge of a particular area of the law. *See*

**5.** The district court relied upon *Jabaay v. Sullivan,* 920 F.2d 472 (7th Cir.1990), which held that an application was timely filed thirty days after the appeal period expired on the *administrative* *proceeding,* not the district court's action. However, that decision was vacated by this court. *See* 946 F.2d 897 (7th Cir.1991).

*Chynoweth v. Sullivan,* 920 F.2d 648, 650 (10th Cir.1990) (holding that a social security specialist does not, solely by virtue of that expertise, fall under the "special factor" exception); *Waterman S.S. Corp. v. Maritime Subsidy Bd.,* 901 F.2d 1119, 1124 (D.C.Cir. 1990) (noting that the two specialties listed as examples in *Pierce* require "technical or other education *outside* the field of American law"). In short, the Secretary submits that we should conclude that a specialization in social security law does not constitute a special factor justifying an enhanced award.

In reply, Mr. Raines submits that the district court correctly followed the analysis in *Pierce* when awarding the special factor enhancement because the court recognized the complexity of this case and the expertise of plaintiff's counsel in handling it. He urges us to follow the Ninth Circuit's decision in *Pirus v. Bowen,* 869 F.2d 536 (9th Cir.1989), which held that social security disability law is a specialty that can fall within the parameters of *Pierce.*

### 2.

■ In *Pierce,* the Supreme Court directed that deferential review be accorded to the district court's EAJA determinations as to whether the Government's position was substantially justified, 487 U.S. at 557–62, 108 S.Ct. at 2545–48, and as to whether the amount of the fee award was proper, *id.* at 571, 108 S.Ct. at 2553. The Supreme Court later confirmed the *Pierce* analysis of the scope of appellate review in *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 403, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990). The Court established a "unitary abuse-of-discretion standard" in Rule 11 cases by following the rationale put forth in *Pierce.*[6] Our decisions have adhered to the *Pierce* standard. *See, e.g., Kolman v. Shalala,* 39 F.3d 173, 177 (7th Cir.1994) (following *Pierce* analysis, finding agency had reasonable basis for its position); *Marcus v. Shalala,* 17 F.3d 1033, 1037 (7th Cir.1994) (stating that our review is deferential but meaningful); *Curtis v. Shala-*

*la,* 12 F.3d 97, 99 (7th Cir.1993) (stating abuse of discretion standard); *Stein v. Sullivan,* 966 F.2d 317, 319 (7th Cir.1992) (holding that district court did not abuse its discretion). On pure questions of law, such as the proper interpretation of the EAJA, we review the determination of the district court de novo. *Curtis,* 12 F.3d at 99.

### 3.

■ The EAJA "is not designed to reimburse reasonable fees without limit." *Pierce,* 487 U.S. at 573, 108 S.Ct. at 2554. The EAJA sets a specific cap of $75.00 on permissible attorney fee awards; adjustments above that amount may be awarded if the court determines that an increased cost of living or a special factor justifies the higher fee. 28 U.S.C. § 2412(d)(2)(A).[7] Because the Supreme Court elucidated the meaning of "special factor" in *Pierce,* 487 U.S. at 571–74, 108 S.Ct. at 2553–54, our analysis must begin with that case. The Justices explained that the higher fee could not be based simply on the limited availability of qualified attorneys. Rather, the Court held that an enhancement of the hourly rate could be justified under the exception if the availability of qualified attorneys is limited *and* if the nature of the case makes it necessary to retain the services of attorneys qualified in "some specialized sense, rather than just in their general legal competence." *Id.* at 572, 108 S.Ct. at 2553. The Court explained:

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question— as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

*Id.* The Court suggested that the distinctive knowledge and skill are exemplified by an "identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* It then concluded that reimbursement above the $75.00 ceiling is allowed when "such qualifications are necessary and

---

**6.** The Court wrote: "In light of our consideration of the purposes and policies of Rule 11 and in accordance with our analysis of analogous EAJA provisions, we reject petitioner's contention that the Court of Appeals should have applied a three-

tiered standard of review." 496 U.S. at 405, 110 S.Ct. at 2460.

**7.** Section 2412(d)(2)(A), *supra* note 2, at 1357.

can be obtained only at rates in excess of the $75 cap." *Id.*

■ We think that the directive of the Supreme Court in *Pierce* makes clear that the special skill requirement of the statute can be defined in terms of either an identifiable practice specialty not easily acquired by a reasonably competent attorney or special non-legal skills such as knowledge of a foreign language. To the extent that the Secretary's submission can be read as defining "special skill" only in the latter terms, she invites us to adopt too narrow, or at least too rigid, a definition.[8] Indeed, often these two elements will be inextricably intertwined. Rather, we believe that *Pierce* directs the courts to recognize that certain practice areas require more advanced and specialized legal skills than those possessed or easily acquired by most members of the bar. In our view, *Pierce* acknowledges that there will be cases in which such specialized training will be necessary. Nevertheless, we believe that such cases will be the exceptional situation and that, by providing for the "specialized case," Congress did indeed contemplate such a situation. A "specialized case" cannot be defined, however, in terms of broad generalizations such as the "novelty and the difficulty of issues," "the undesirability of the case" or the "results obtained." *Pierce,* 487 U.S. at 573, 108 S.Ct. at 2554.

In any event, we agree with our colleagues in the Eighth and Tenth Circuits that the area of social security law cannot in itself be considered such a specialized area of law practice as to warrant, as a general rule, payment in excess of the $75.00 rate. *Stockton v. Shalala,* 36 F.3d 49, 50 (8th Cir.1994); *Chynoweth v. Sullivan,* 920 F.2d 648, 650 (10th Cir.1990). We do not read *Stockton* or *Chynoweth* as necessarily in conflict with *Pirus v. Bowen,* 869 F.2d 536 (9th Cir.1989). Although *Pirus* does acknowledge that social security cases can be a specialized area, it does so in the context of a class action and therefore may be based on the need for special expertise. However, to the extent that *Pirus* may be read as holding that social security cases are *always* a matter of specialization for purposes of the EAJA, we find ourselves in respectful disagreement.[9] Rather, the appropriate inquiry is whether the individual case presents such an " 'unusual' " situation that it *requires* someone of "specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." *Id.*

> [M]erely because some scholarly effort and professional experience is required to attain proficiency in a particular practice area does not automatically require enhancement of the EAJA rate.

*Id.;* see also *Vibra–Tech Eng'rs, Inc. v. United States,* 787 F.2d 1416, 1420 (10th Cir.1986) (stating that "[i]ncomparable expertise, standing alone, will not justify the higher rate").

### 4.

■ We believe that the district court began its analysis on the right foot when it stated that social security cases are not automatically entitled to the enhancement of fees. The district court made a specific assessment that "the issues present in Mr. Raines' case were complex and required more than just routine lawyering skills available from the general bar." Order at 14. In the district

---

8. We note that the District of Columbia Circuit has characterized the two examples given in *Pierce,* patent law and foreign language ability, as both requiring "technical or other education *outside* the field of American law." *Waterman S.S. Corp. v. Maritime Subsidy Bd.,* 901 F.2d 1119, 1124 (D.C.Cir.1990). We do not read this dictum, admittedly "premature," *id.,* to be intended as an all-inclusive description of the exception.

9. The Ninth Circuit has also stated that environmental litigation may "constitute 'an identifiable practice specialty,' " see *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci,* 867 F.2d 1224, 1226 (9th Cir.1989), and that an attorney's "prior insecti-

cide litigation experience, coupled with his experience in obtaining federal preliminary injunctions," may qualify as " 'distinctive knowledge' under *Pirus,* " see *Love v. Reilly,* 924 F.2d 1492, 1496 (9th Cir.1991). But in both cases the court remanded the fees decision to the district court, without awarding enhanced fees, because the appellants had not established another requisite element of the *Pierce* criteria for the special factor exception. Judge Wallace, concurring in part and dissenting in part in *Love,* stated that "the Supreme Court's language in *Pierce* convinces me that such a broad legal field cannot qualify as a specialized practice area warranting payment in excess of $75 an hour." *Id.,* 924 F.2d at 1498.

court's view, "[f]or Raines to receive effective representation, he needed counsel with intimate knowledge of the Social Security Act and how benefits under the Act relate to other entitlement programs impacting on areas of his life which are vital to his well-being." *Id.* In short, the district court concluded that the plaintiff had made an adequate case that "distinctive knowledge or specialized skill" was "needful for the litigation in question." It is this determination that must now be scrutinized to determine whether the decision of the district court ought to stand.

Our reading of *Pierce* convinces us that the district court employed too lenient a test to determine that a special factor enhancement was justified. We do not question the proficiency of Mr. ·Raines' attorney in the area of social security benefits law. However, we believe that the specialized skills described by the district court do not constitute the sort of expertise that is unattainable by a competent attorney who has diligently accomplished the legal work necessary in this case. We also believe that the district court erroneously determined that Mr. Raines' case was so complex that it *necessarily* required extraordinary lawyering skills. Our review of the record convinces us that this case cannot be characterized as requiring specialized skills on the part of the attorney. Indeed, the principal issues—whether the ALJ was justified in rejecting the opinion of the applicant's psychologist and whether the ALJ should have ordered a consultative examination—are issues that arise not infrequently in disability litigation. The attorney's appreciation of the interrelationship of disability benefits and supplemental security income was also a matter that was not beyond the ability of the diligent practitioner.

Accordingly, we believe that the district court should not have permitted the enhancement of the fee award on the ground that this case required "distinctive knowledge or

specialized skill." Because we do not believe that the district court's decision was among those options from which one could have expected the court to choose on the basis of this record, we cannot let its judgment stand even under a deferential standard of review. *Cf. Gateway E. Ry. v. Terminal R.R. Ass'n,* 35 F.3d 1134, 1142 (7th Cir.1994) (noting that a district court does not abuse its discretion when it chooses from "the range of options from which one could expect a reasonable trial judge to select") (quoting *United States v. Koen,* 982 F.2d 1101, 1114 (7th Cir.1992)). However, as we noted earlier, the Secretary has not objected to a higher fee based on an increase in the cost of living. Therefore on remand the district court must determine whether Mr. Raines is entitled to such an enhancement.

**B. *Attorney Fees for Post–Remand Proceedings***

1.

■ We now turn to the remaining issue in this appeal: whether Mr. Raines is entitled to attorney fees for the services rendered in proceedings on remand from the district court that were conducted by the ALJ. At the outset, we note that there is no dispute between the parties as to the basis of this remand; they agree that the district court remanded this case under sentence four of 42 U.S.C. § 405(g). We also note that, although the governing principles in this area have undergone a great deal of evolution in recent times,[10] *Shalala v. Schaefer,* — U.S. —, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), now makes clear that a social security claimant who obtains a sentence four judgment reversing the Secretary's denial of benefits and requiring further proceedings in the agency becomes, for purposes of the EAJA, a "prevailing party" upon remand. Consequently, the subsequent proceedings before the agency are not covered by the EAJA. As we noted in *Curtis v.*

---

**10.** The principal cases involved in this evolution are *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), *Sullivan v. Finklestein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), and *Shalala v. Schaefer,* — U.S. —, 113 S.Ct. 2625,

125 L.Ed.2d 239 (1993). The evolution is described in some detail by Judge Foreman in *Curtis v. Shalala,* 12 F.3d 97 (7th Cir.1993) and by Judge Schroeder in *Holt v. Shalala,* 35 F.3d 376 (9th Cir.1994), *amended on reh'g* (9th Cir. Aug. 23, 1994).

*Shalala,* 12 F.3d 97 (7th Cir.1993), "the proceedings on remand cannot be considered as part of the 'civil action' in the district court." *Id.* at 100.

Mr. Raines contends, however, that the district court's remand order of June 8, 1990, was not a final judgment because the court did not comply with Rule 58 of the Federal Rules of Civil Procedure. In the minute order form accompanying the magistrate judge's order, the box marked "other docket entry" was checked instead of the box "judgment is entered." *See American Nat'l Bank & Trust Co. v. Secretary of HUD,* 946 F.2d 1286, 1289 (7th Cir.1991) (setting forth what constitutes a "separate document" under Rule 58). We believe that this situation is controlled by our decision in *Curtis.* We resolved there that the district court's failure to comply with Rule 58 does not change the nature of the sentence four remand. Even though the district court's noncompliance with Rule 58 was error, the remand ordered pursuant to sentence four was still a final judgment.

> However, that error does not change the fact that the court's order is entered pursuant to sentence four rather than sentence six. As stated above, a sentence-four remand terminates the district court's case. Therefore, the administrative proceedings cannot be considered a part and parcel of the 'civil action' before the court—regardless of whether the court complied with the formalities of Rule 58.

*Curtis,* 12 F.3d at 101. The flaw in a Rule 58 judgment affects the timeliness of a notice of appeal. *See Schaefer,* —— U.S. at ——, 113 S.Ct. at 2632; *Kolman,* 39 F.3d at 176; *Dzikunoo v. McGaw YMCA,* 39 F.3d 166, 167 (7th Cir.1994). This issue, however, is not before us.[11] As we held in *Curtis,* the failure to enter formally a final judgment does not affect the fact that the district court's determination is final for purposes of the EAJA

and that the final judgment in the civil action does not encompass the administrative proceeding following it. The "final judgment" must be the judgment rendered by a court of law rather than an administrative agency. *Melkonyan,* 501 U.S. at 96, 111 S.Ct. at 2162. Consequently, the "final judgment" is the district court's remand order. It is that judgment that serves as a basis for the award of fees under the EAJA, and that judgment does not encompass the administrative proceedings subsequent to the remand.

2.

■ Mr. Raines also submits that, because the law of this circuit previously had required a plaintiff to receive a favorable *administrative* decision on remand in order to be a prevailing party, we ought not apply the decision of the Supreme Court in *Schaefer* retroactively. We believe that such a course would be contrary to the decision of the Supreme Court in *Harper v. Virginia Dep't of Taxation,* —— U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). The rule in *Harper* is:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

—— U.S. at ——, 113 S.Ct. at 2517. We note that the *Schaefer* decision was applied retroactively to the claimant in that case, after post-remand proceedings had been completed. That decision therefore governs all other pending litigation still on direct appeal. *Harper,* —— U.S. at —— – ——, 113 S.Ct. at 2517–18.[12] As the Supreme Court wrote in *Harper:*

---

**11.** The Secretary concedes explicitly that Mr. Raines' petition is timely under *Shalala v. Schaefer. See* Secretary's Br. at 16. This court, following *Schaefer,* has held that an EAJA application was timely, due to a flawed or missing Rule 58 judgment, in *O'Connor v. Shalala,* 23 F.3d 1232, 1235 (7th Cir.1994) as well as in *Curtis* and *Kolman,* cited in the text.

**12.** *See United States v. Burnom,* 27 F.3d 283, 284 (7th Cir.1994) (applying ruling retroactively in criminal case); *Hebron v. Touhy,* 18 F.3d 421, 424 (7th Cir.1994) (applying § 1983 determinations retroactively); *see also McKinney v. Pate,* 20

[W]e now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule.

—— U.S. at ——, 113 S.Ct. at 2517 (quoting *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 543, 111 S.Ct. 2439, 2447, 115 L.Ed.2d 481 (1991) (opinion of Souter, J.)).

### Conclusion

For the foregoing reasons we hold that the district court's determination that an enhancement of EAJA attorney fees based on the "special factor" exception was an abuse of its discretion. We also hold that the district court erred in awarding attorney fees for the administrative proceedings following the sentence four remand in this case. Accordingly, the judgment of the district court is reversed, and the case is remanded to the district court for proceedings consistent with this opinion.

REVERSED and REMANDED.

F.3d 1550, 1566 (11th Cir.1994) (stating that *"Beam* and *Harper* stand only for the proposition that, once a rule of federal law is applied to the parties in the [noncriminal] case in which it was

announced, it must be applied retroactively"), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 793 (1995).