**Lawrence G. BURTON, Plaintiff–
Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

**No. 01–4315.**

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 2002.

Decided Aug. 6, 2002.

---

* After examining the briefs and record, we conclude that oral argument is unnecessary, and

the appeal is submitted for decision. *See* Fed. R.App. P. 34(a)(2).

.

Before COFFEY, KANNE, ROVNER, Circuit Judges.

## ORDER

Lawrence G. Burton appeals the district court's decision denying attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), after he received a favorable decision from the Social Security Administration. Because the Commissioner's position was substantially justified, we affirm.

## Background

In October 1996 Burton filed a petition for disability benefits starting in July 1995, alleging a psychological disability relating to anxiety problems and panic attacks as well as a physical disability relating to arthritis in his back and hands. At the time he filed his petition, Burton was 57 years old, had an eight-grade education, and had prior work experience primarily as a painter, though he also worked as a "parking lot signaler."

In March 1997, after a hearing, an ALJ denied disability benefits, concluding that, even taking into account Burton's psychological and physical limitations and his inability to perform his past relevant work, he still had the residual functional capacity to perform a number of other jobs (including stock-handling, assembling, and packaging positions). The ALJ found that while Burton suffered from some psychological limitations relating to anxiety problems and panic attacks, his psychological condition was not severe enough to be classified as debilitating. The ALJ focused on medical records indicating that Burton had been taking medication, and that his condition was improving. The court further noted that Burton would have difficulty working in large crowds or in close proximity to others.

As for Burton's physical condition, the ALJ likewise found that he suffered from some limitations due to arthritis but that he was not physically disabled. Despite Burton's own testimony that he suffered from severe physical limitations including back pain, difficulty standing and walking, and an inability to grip objects, the ALJ noted that there was no evidence presented to establish that he had received medical attention for any of the physical problems alleged nor had he been taking medication for the same. The ALJ also relied on a report following a consultative

physical examination indicating that Burton did not have severe limitations relating to range of motion or grip strength, and also noted Burton's testimony that during the disability period he was able to engage in activities such as driving, fishing, and playing the guitar.

Burton appealed the ALJ's decision to the Appeals Council. While that appeal was pending, Burton began seeking medical treatment for his back. He furnished the Appeals Council with documentation of this treatment, confirming that he was suffering from severe spinal problems and was diagnosed in July 1997 with "degenerative disc disease." In October, Burton underwent back surgery. In August 1998 the Appeals Council denied his request for review, commenting that the newly submitted evidence appeared to relate to a new condition or a later time period than the ALJ's decision (which related to a disability period of July 1995 to March 1997 for psychological problems and arthritis). The Appeals Council informed Burton that he could either file a new claim for benefits or challenge the decision in federal district court.

In March 1999 Burton filed a lawsuit in federal court, challenging the ALJ's determination that he was not disabled. In addition to the evidence submitted to the Appeals Council relating to his back treatment and surgery, Burton submitted new medical evidence to show that he did not retain the functional capacity found by the ALJ. This new evidence included an eight-page "functional capacity evaluation" performed in October 1998, indicating that Burton suffered from severe limitations in range of motion and grip strength. In light of the new evidence, both parties agreed that the case should be remanded for a new hearing to evaluate Burton's physical impairments. *See* 42 U.S.C. § 405(g) ("The court may ... remand the

case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material."). In June, the district court granted the parties' joint-motion to remand the case for a new hearing.

In March 2001 a second hearing was held before a different ALJ. This time the ALJ found that Burton was disabled based on severe limitations due to "degenerative joint disease of the spine and a panic disorder." In addition to the new medical evidence relating to his back condition and surgery and residual functional capacity, Burton submitted further evidence including chiropractic treatment notes from 1995 showing that his back problems dated back to 1995. The ALJ relied on this evidence to conclude that Burton had severe physical limitations, could perform only light work, and had no transferrable skills from his prior work that would allow him to do light work. Accordingly, the ALJ found that Burton had a disability dating back to 1995, and was therefore entitled to benefits.

Burton then filed a petition under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A), for attorney's fees in the amount of $10,664.38 ($4,166.88 of which was to reimburse Burton for fees already paid). The EAJA allows a prevailing party in a suit against the government to obtain attorney's fees if the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The district court denied the petition for fees, concluding that the agency's position was substantially justified at both the litigation and pre-litigation stages. At the litigation stage, the court concluded, the agency had reasonably agreed to remand the case so that an ALJ could consider the new evidence documenting Burton's spinal condi-

tion and residual functional capacity. The court also concluded that during the pre-litigation stage, particularly the first ALJ hearing, the agency was justified in denying benefits because Burton had yet to provide the objective medical evidence (documenting his spinal condition and functional capacity) relied on by the second ALJ.

## Analysis

Merely prevailing in a lawsuit against the government does not automatically entitle a party to fees under the EAJA, nor are fees presumed. *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1079 (7th Cir.2000); *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir.1996). The government, however, bears the burden of showing that its position was substantially justified. *Hallmark*, 200 F.3d at 1079; *Jackson*, 94 F.3d at 278. A position could be incorrect and still be considered substantially justified. *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). A position is substantially justified if it is justified to a degree that would satisfy a reasonable person. *Id.* at 565; *Jackson*, 94 F.3d at 278. In other words, a position is substantially justified if (1) there is a rational basis for the facts alleged; (2) there is a rational basis for the legal theory; and (3) there is a rational connection between the facts alleged and the legal theory. *Hallmark*, 200 F.3d at 1080.

In assessing claims for fees under the EAJA, we consider both the agency's litigation and pre-litigation conduct, and make one determination as to whether the agency's position throughout the entire process was substantially justified. *Id.;* *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir.1994). We review the district court's decision to grant or deny fees under the EAJA for abuse of discretion. *Pierce*, 487 U.S. at 280; *Hallmark*, 200 F.3d at 1078.

Examining the agency's conduct as a whole, the agency was substantially justified at both the litigation and pre-litigation stages. At the litigation stage, the agency agreed to remand the case for a hearing in light of new evidence. At the pre-litigation stage, the agency had a rational basis for denying relief after the first ALJ hearing because Burton failed to provide any objective medical evidence to support his claim of physical disability. The agency also had a rational basis for denying review from the Appeals Council: the original complaint focused on a psychological disability and arthritis, and Burton submitted medical evidence chronicling treatment for a different disorder ("degenerative disc disorder") taking place after the original ALJ hearing. Moreover, the Appeals Council was not presented with the "functional capacity evaluation" from October 1998 indicating the severity of Burton's limitations with respect to range of motion and grip strength, which was presented for the first time in district court. Because the evidence establishing Burton's physical disability was not presented at the earlier proceedings, the agency's conduct as a whole was reasonable and the district court did not abuse its discretion in denying the petition for fees. *See Jackson*, 94 F.3d at 280 (Social Security Commissioner's position was substantially justified because evidence in the record supported agency's position at ALJ hearing even though the ALJ decision was remanded); *Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir.1994) (Commissioner's position substantially justified because agency had "a rational ground for thinking it had a rational ground for its action").

Burton focuses on two decisions made by the first ALJ that he claims make the agency's position as a whole not substantially justified. First, he focuses on the first ALJ's ruling not to subpoena the

doctor who provided his consultative examination. Burton argues that the ALJ's ruling deprived him of an opportunity to challenge the doctor's conclusions on cross-examination. Burton is incorrect, however, in asserting that he had an absolute right to subpoena the doctor. The ALJ could have issued a subpoena to the doctor, *see* 20 C.F.R. § 404.950(d)(1), but was not required to do so, *Butera v. Apfel,* 173 F.3d 1049, 1057–58 (7th Cir.1999). Burton also does not specify how issuing the subpoena would have affected the outcome: the ALJ already had a report from the doctor indicating that, despite some impairment, Burton did not have severe limitations with range of motion and grip strength, and Burton still did not have any objective medical evidence (such as medical treatment notes) to support his allegations of severe limitations relating to his back problems and grip strength. Therefore, the ALJ had reasonable grounds not to issue a subpoena, and this ruling does not make the agency's position as a whole unjustified. *See id* at 1057–59.

Second, Burton argues that the first ALJ did not develop an adequate record on which to conclude that he did not suffer from debilitating physical limitations. Burton contends that the ALJ should have obtained further medical evidence pertaining to his physical ailments. While an ALJ may seek additional evidence if the record contains conflicting evidence or insufficient evidence on which to base a decision, *see* 20 C.F.R. § 404.1527(c)(3), the ALJ need not do so if the evidence is consistent and sufficient, *see* 20 C.F.R. § 404.1527(c)(1); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir.1994). Th ALJ had an adequate record in this case. In addition to the uncontradicted doctor's report finding only some limitation with range of motion and grip strength, and Burton's complete lack of medical evidence corroborating his allegations, the ALJ noted that other evidence in the record was consistent with the doctor's report. Specifically, Burton admitted that he had not sought treatment or taken pain medication for his condition, and that he engaged in various activities such as driving, playing the guitar, and fishing. *But see Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000) (claimant's engaging in minimal daily activities is insufficient by itself to establish that claimant can engage in substantial physical activity). Moreover, it was Burton's burden to provide the ALJ with medical and other evidence on which to reach a conclusion about his impairments. *See Luna,* 22 F.3d at 693. Therefore, even though Burton was ultimately found to be disabled in the second hearing, the first ALJ had an adequate record on which to conclude otherwise.

Accordingly, the district court's judgment is AFFIRMED.